## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ALFREDO BETANCOURT-MUNOZ, | : | MOTION TO VACATE |
| | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:09-CR-0025-TCB-JSA-7 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| | : | 1:12-CV-1763-TCB-JSA |
| Respondent. | : | |

## <u>MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION</u>

Through counsel, Movant Alfredo Betancourt-Munoz has filed the instant amended motion to vacate pursuant to 28 U.S.C. § 2255.  (Doc. 439).  Movant seeks to challenge the constitutionality of his sentence, which was imposed on October 27, 2011, following a guilty plea entered in the Northern District of Georgia.  (Docs. 282, 319).  For the reasons that follow, the undersigned **RECOMMENDS** that the instant § 2255 motion to vacate [Docs. 373, 439] be **DENIED**.

I.   <u>Procedural History</u>

On August 11, 2011, Movant, represented by Vernon Smith, entered a guilty plea to a single count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956.  (Docs. 282, 388).  The plea agreement contains a waiver of

Movant's appellate and collateral rights. (Doc. 282, Att. 1 at 10). On October 27, 2011, United States District Judge Timothy C. Batten, Sr. sentenced Movant to ninety-six (96) months of imprisonment to be followed by three years of supervised release. (Doc. 128). Movant filed a *pro se* § 2255 motion in this Court on May 15, 2012.[1] As far as the Court could glean from the motion, Movant raised the following claims:

> (1)   Movant's counsel was constitutionally ineffective for failing to file an appeal after Movant requested him to do so;
>
> (2)   Movant's guilty plea was involuntary based on counsel's ineffective assistance because the Government and counsel promised Movant that he would receive 36 months imprisonment; and
>
> (3)   Movant's counsel was constitutionally ineffective because counsel failed to challenge the amount of money attributed to Movant and for failing to seek a safety valve reduction pursuant to U.S.S.G. § 5C1.2.

(Doc. 373).

Because the record of the case did not conclusively demonstrate what, if any, communications occurred between Movant and his attorney regarding any

---

[1] Under the federal "mailbox rule," both a *pro se* federal habeas petition and a § 2255 motion are deemed to be filed on the date they were delivered to prison authorities for mailing (*i.e.*, signed). *See Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008); *Rodriguez v. United States*, 279 F. App'x 753, 753 (11th Cir. 2008).

AO 72A
(Rev.8/82)

appeal, the undersigned believed it prudent to hold a limited evidentiary hearing as to whether Movant's counsel failed to follow Movant's instruction to file an appeal. (Doc. 417). The undersigned indicated that since the Court already was convening an evidentiary hearing, Movant also would have the opportunity to present evidence to support his claim that his plea was "coerced" and that he responded "yes" to the questions during the plea colloquy only because counsel told him to do so. (*Id.*; Doc. 373 at 4). By separate Order, the undersigned appointed Roger C. Wilson to represent Movant for purposes of the hearing and any related matters. (Docs. 416, 417).

Instead of presenting evidence at the hearing on January 29, 2013, Mr. Wilson asked the Court for an additional period of time to file an amended motion to vacate, which the Court granted. (Doc. 447 at 5-7, 10). Mr. Wilson filed the amended motion to vacate on Movant's behalf on March 4, 2013, and now raises the following claims: (1) Movant's plea counsel was ineffective for failing to consult with Movant about his right to appeal;[2] and (2) Movant's guilty plea was not knowing or voluntary based on ineffective assistance of counsel where counsel

---

[2] Movant apparently no longer claims that he asked his attorney to file an appeal on his behalf and that his attorney failed to do so.

allegedly promised Movant that he would receive a thirty-six (36) month sentence if he "went along" with the plea colloquy.[3]  Movant asks this Court to vacate his sentence so that he may file an out-of-time appeal.

Because of the fundamental right to appeal in a criminal case in this Circuit, and despite the fact that Movant's claims were in direct conflict with his sworn testimony during the plea hearing, the undersigned believed the prudent course was to hold a limited evidentiary hearing to demonstrate what, if any, communications occurred between Movant and his attorney with regard to the two issues raised in the revised § 2255 motion.  (Doc. 463).  The undersigned held an evidentiary hearing on July 23, 2013, during which Movant and his former attorney, Vernon Smith, testified.

For the following reasons, the undersigned **RECOMMENDS** that the motion to vacate [Docs. 373, 439] be **DENIED**.

---

[3] Movant appears to abandon the remainder of the claims set forth in the original motion.

II.    Applicable Law

A.    Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack."  *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

5

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989).  As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is entitled to no relief in connection with any of his claims.  Thus, no evidentiary hearing is required.

B.    Ineffective Assistance of Counsel

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010).  "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687).  To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)).  To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v.*

6

*Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).  The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds."  *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Strickland's two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  The Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process," *Id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla v. Kentucky*, 559 U.S. 356, __, 130 S. Ct. 1473, 1485 (2010).  *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail.").

7

III.   <u>Analysis</u>

The Government argues that Movant knowingly and voluntarily entered into his guilty plea, and that counsel was not ineffective for failing to consult with Movant about an appeal.  The undersigned agrees.

    A.   <u>Evidence Presented at the Evidentiary Hearing</u>

During the evidentiary hearing, Movant testified that in signing the plea agreement he relied upon an email from the Government's attorney, which states that Movant's co-defendant "ended up with a sentence of 36 months.  His agreement is exactly what I proposed for [Movant]." (Doc. 439, Att. 1; Doc. 470, at 9).  According to Movant, despite the fact that Mr. Smith went over the plea agreement with him through an interpreter prior to entering his guilty plea and that the thirty-six month "promise" was nowhere in the agreement, he was "misled" into the agreement by this "promise." (*Id.* at 16, 34).  While Movant also testified that he "understood" that if he "went along" with the plea colloquy he would receive the thirty-six month sentence, he could not remember the exact words that Mr. Smith used to validate this "understanding," and he admitted that no one told him to be untruthful or to say "yes" or "no" to particular questions during the colloquy.  (*Id.* at 22-23).  Movant also understood that, despite this alleged

8

"promise," Judge Batten was not required to sentence him to thirty-six months. (*Id.* at 29-30).

Movant testified that Mr. Smith never explained his appellate rights to him, or that he was giving up those rights; however, Movant did, in fact, understand the appellate waiver when Judge Batten explained it to him. (*Id.* at 26-27). Movant also admitted that after he was sentenced he never indicated to Mr. Smith that he wanted to appeal. (*Id.* at 30-31).

Mr. Smith testified that he used an interpreter throughout his representation of Movant and that Movant always seemed to understand what Mr. Smith told him. (Doc. 470 at 36-37). Mr. Smith never told Movant that the Government was promising a thirty-six month sentence or that Movant would receive such a sentence. (*Id.* at 40). To the contrary, because Mr. Smith was concerned that all Movant would see from the email was thirty-six months, when Mr. Smith presented the email and the co-defendant's plea agreement to Movant, Mr. Smith "took specific care" to explain to Movant that thirty-six months was simply what that particular person received, that many variables go into a sentence, that Movant was not guaranteed the same thirty-six months, and that the email was not something that Movant could rely upon. (*Id.* at 38-39, 46, 53). When Mr. Smith

9

went over the actual plea agreement with Movant, he did not tell Movant that the plea agreement somehow incorporated the Government's previous email. (*Id.* at 40).

After Movant entered into his guilty plea and prior to sentencing, Mr. Smith also discussed the presentence report with Movant, which recommended a guideline range of 135 to 168 months. (Doc. 470 at 41). Mr. Smith and Movant discussed the fact that the probation office recommended a higher guideline range than that which Movant had bargained for in the agreement based on the dollar amount attributed to the drugs. (*Id.* at 41-42).[4] At no time during the discussion of the higher guideline range, however, did Movant raise the thirty-six month issue. (*Id.*). Movant also did not indicate that he was confused during the sentencing proceedings. (*Id.* at 42).

In connection with the plea agreement, Mr. Smith discussed the appellate waiver with Movant and told Movant that any appeal would likely be unsuccessful because he was waiving his appellate rights. (*Id.* at 42). Immediately after Movant

---

[4] The Government, however, honored its agreement with Movant by asking the Court not to impose the higher dollar amount recommended by the probation office. (Doc. 369 at 6-7; Doc. 470 at 40).

10

was sentenced, Mr. Smith asked Movant through the interpreter if he wanted to appeal and Movant replied that he did not.  (*Id.*).

> B.     Movant's Plea was Knowing and Voluntary.

Although the appellate waiver in Movant's plea agreement precludes both direct and collateral review of both his sentences and convictions, an appellate waiver does not bar claims for ineffective assistance of counsel relating to the plea agreement or waiver, or claims challenging the voluntariness of the plea.  *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005).  Thus, the undersigned must review Movant's claim that his plea was involuntary because counsel and/or the Government "promised" him that he would receive a thirty-six month sentence. Movant relies upon the email from the Government, discussed *supra*, that states that Movant's co-defendant "ended up with a sentence of 36 months.  His agreement is exactly what I proposed for [Movant]."  (Doc. 439, Att. 1).

First, the Court fails to see how that email would constitute a "promise," especially where it was not incorporated into the ultimate plea agreement. Movant's claim also directly conflicts with his sworn testimony during the plea hearing, and there is a strong presumption that statements made during the plea

11

colloquy are true. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Anderson*, 384 F. App'x 863, 865 (11th Cir. 2010) ("There is a strong presumption that statements made during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008)*; Patel*, 252 F. App'x at 974. Where, as here, a Movant's claim of ineffective assistance of counsel conflicts with his statements under oath, he has a strong burden to show that his statements under oath were false. *Patel*, 252 F. App'x at 974-75. Movant, however, has not met this burden.

During the plea hearing, Movant was provided with a court-appointed interpreter and swore that: he entered the plea through his own free will; nobody forced or coerced him to plead guilty; no one promised him anything other than what was contained in the written plea agreement; he had reviewed the plea agreement and guilty plea with his attorney and understood it. (Doc. 388 at 2, 7, 11). Additionally, Movant's sworn statements indicate that Movant understood that the maximum sentence he faced was twenty years imprisonment, and that he could not withdraw his plea even if he received a more severe sentence than the guideline range. (*Id.* at 6).

12

Moreover, Judge Batten specifically questioned Movant about whether Movant understood that the Court was not bound by any sentence that may have been promised to Movant:

> THE COURT: I am not a party to this agreement between you and the prosecution, and therefore I am not bound by it. So if it contains any promises to you by the Government that at the sentencing the Government will represent – excuse me, request or recommend some application of the guidelines or how you should be sentenced, I am not bound by those requests or recommendations. I may accept them, but I don't have to accept them. And if I don't accept any such recommendation or request by the Government at the sentence, you are still stuck with your guilty plea, you can't withdraw it, and you are stuck with the sentence that I give you. Do you understand that?
>
> [MOVANT]: Yes, sir.

(Doc. 388 at 11-12).

Movant's testimony during the evidentiary hearing about why he thought he was promised, and/or he thought that if he "went along" with the plea colloquy he would receive, a thirty-six month sentence, was vague at best. Such vague testimony is in stark contrast both to his own sworn testimony during the plea hearing and to Mr. Smith's unequivocal testimony that Mr. Smith specifically explained to Movant prior to entering into his plea that he should *not* rely on this email as an indication of the sentence he would receive. Thus, despite Movant's

13

AO 72A
(Rev.8/82)

current self-serving claim that he relied on counsel's alleged "promise" of a thirty-six month sentence in entering his plea, and/or that he "believed" that he would receive that sentence if he "went along" with the plea colloquy, he has not overcome the strong presumption of the veracity of his sworn statements during the plea hearing. *See United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (finding the petitioner did not overcome the strong presumption of truth of his statements made at the plea colloquy where after the fact he claimed that counsel had promised him a shorter sentence than he received, because during the plea colloquy he stated that he understood that the court was not required to accept the sentencing recommendations made by the parties, that if he received a sentence higher than any recommended sentence or otherwise disagreed with the sentence he could not withdraw his guilty plea, and that he was not relying on promises made to him outside of his plea agreement); *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (noting that testimony at a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made."); *Abdul-Aziz v. United States*, No. CIV A 1:05CV86, CRIM A 1:03CR39,

14

2008 WL 4238943, at *6 (N.D. W.Va. Sept. 12, 2008) ("Simply because the petitioner now says [an oral] agreement existed, does not make it so, particularly in light of the testimony the petitioner gave under oath at his plea hearing."); *Paulino v. United States*, 964 F. Supp. 119, 125 n.2 (S.D. N.Y. 1997) (rejecting the movant's habeas claim that he did not carry a firearm but told the court that he did because of advice from his then-counsel, where his statements under oath at the plea colloquy indicated the contrary); *see also United States v. Morgan*, 398 F. App'x 497, 502 (11th Cir. 2010) (finding district court did not abuse its discretion by refusing to allow the defendant to withdraw his guilty plea based on counsel's alleged prediction of his sentence, where, *inter alia*, at the time of his guilty plea the defendant knew that his attorney's prediction of his sentence was not a guarantee and that he told the judge that he had not relied on any assurances that were not contained in the plea agreement); *United States v. Wright*, 135 F. App'x 222, 226 (11th Cir. 2005) (affirming district court's refusal to allow defendant to withdraw his plea based on his claim that his attorney's estimate of the sentencing range was incorrect); *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) (holding that, "[t]o the extent [the defendant] claimed his guilty plea was based on his attorney's estimate of the sentence. . ., the claim did not warrant withdrawal of

15

AO 72A
(Rev.8/82)

the guilty plea where [the defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed.").

Even if counsel had misinformed Movant as to his likely sentence, however, an erroneous sentence estimate by counsel does not render a plea involuntary. *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam); *United States v. Himick*, 139 F. App'x 227, 228-29 (11th Cir. 2005); *United States v. Orr*, 165 F. App'x 623, 624-25 (10th Cir. 2006); *United States v. Tealer*, No. 01-51262, 2002 WL 31415154 at *1 (5th Cir. Oct. 9, 2002); *United States ex rel. LaFay v. Fritz*, 455 F.2d 297, 302 (2d Cir. 1972). Thus, given Movant's sworn testimony at the plea hearing that he understood the possible range for sentencing, that the maximum sentence was twenty years, that the Court was not bound by any recommendations or promises to Movant with regard to a particular sentence, and that Movant could not withdraw his plea even if he received a higher sentence than he expected, Movant's claim that counsel (and/or the Government) promised him he would receive a lesser sentence does not invalidate his plea. *See Munguia-Ramirez*, 267 F. App'x 894, 898 (11th Cir. 2008) (holding district court did not err in finding that the movant knowingly and voluntarily entered into guilty plea due

16

to counsel's incorrect estimation of his ultimate sentence, where record indicated that he understood that he could not withdraw his plea even if he received a more severe sentence than he thought) (citing *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987)); *United States v. Kerns*, 53 F. App'x 863, 866 (10th Cir. 2002) (finding claim that because attorney assured the movant that his sentence would be less than what he ultimately received cannot constitute a challenge to the voluntariness of his plea, as he stated during the plea colloquy that no one had made any promises inducing him to enter a guilty plea).

Furthermore, although Movant claims that had he known that he would not have been sentenced to thirty-six months he would not have entered into a guilty plea,  that conclusory statement is insufficient to satisfy the prejudice prong of the *Strickland* test.  *See, e.g., Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) ("We have stated that a petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*.") (citations omitted).  Indeed, the properly-conducted plea colloquy in this case dispels any such prejudice.  *See Dickey v. United States*, 437 F. App'x 851, 852 (11th Cir. 2011) (holding movant failed to show prejudice from attorney's alleged wrong advice about the potential sentencing range because during the plea hearing the

17

district court advised him of the minimum and maximum of each count which he stated he understood, and he therefore was fully apprised of his potential sentence); *Cruz v. United States*, 188 F. App'x 908, 914 (11th Cir. 2006) (finding no ineffective assistance where movant claimed that counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing because, *inter alia*, "[t]he court . . . explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else."); *United States v. McDowell*, No. 2013 WL 2321607, at *4 (10th Cir. May 29, 2013) (finding no prejudice from attorney's alleged misinformation about movant's likely sentence where during the plea colloquy the movant affirmed that she understood that the district court had discretion regarding her sentence); *United States v. Akinsade*, 686 F.3d 248, (4th Cir. 2012) ("A defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment.").

Finally, aside from the overwhelming evidence the Government would have presented at Movant's trial (*see* Doc. 388 at 8-11), in connection with the plea the Government dismissed forty-one additional counts against Movant, which, if

18

convicted by a jury, could have added considerable penalty to his sentence. (*See* Doc. 1; Doc. 282, Att. 1 at 4). Likewise, Movant received a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), which significantly reduced his guideline range. (Doc. 282, Att. 1 at 4; Doc. 369 at 17). Thus, Movant has not demonstrated that despite counsel's alleged deficient performance, a decision to reject the plea bargain would have been rational under the circumstances. *See Padilla*, 130 S. Ct. at 1485; *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (holding movant could not show prejudice – *i.e.*, that a rational person would have rejected the plea bargain – where by entering the plea his sentence was reduced by eight years); *United States v. Fisher*, Nos. 5:12CV80545, 5:10CR00037, 2013 WL 1871275, at *5 (W.D. Va. May 3, 2013) (holding that movant did not demonstrate prejudice where the evidence against him was overwhelming and a rational defendant would not have rejected a plea agreement that provided him with a three-level reduction for acceptance of responsibility which significantly lowered his guideline range); *Segura v. Houston*, No. 2013 WL 425247, at *8 (D. Neb. Feb. 4, 2013) (holding no rational defendant would have rejected plea where four counts were dismissed in connection with the plea and therefore by entering the plea the defendant's

19

sentence exposure was significantly reduced).   Accordingly, Movant has not demonstrated that ineffective assistance of counsel rendered his plea anything other than knowing and voluntary.

C.      Counsel Was Not Ineffective With Regard to Movant's Appellate Rights.

In this Circuit, the right to appeal a criminal case is fundamental.  *See Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir. 1972) (citations and quotations omitted).[5]  When an attorney disregards instructions from a defendant to file an appeal, therefore, such disregard constitutes ineffective assistance of counsel *per se*.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477-86 (2000).  This type of ineffective assistance claim also is analyzed under the two-pronged *Strickland* test. *Roe v. Flores-Ortega*, 528 U.S. at 476-77.

Here, where the movant did not specifically ask for an appeal, the first inquiry the Court must make is whether the attorney actually consulted with the defendant about an appeal.  *Flores-Ortega*, 528 U.S. at 478; *Thompson*, 504 F.3d at 1206.  Counsel's duty to consult with his client requires counsel to inform the

_____

[5] Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

defendant about the right to appeal, advise the defendant about the advantages and

disadvantages of an appeal, and make a reasonable effort to determine whether the

defendant wishes to pursue the appeal – regardless of the merits of such an appeal.

*Flores-Ortega*, 528 U.S. at 478; *Thompson v. United States*, 504 F.3d 1203, 1206

(11th Cir. 2007).  If counsel did not adequately consult with the defendant, the

Court next must ask whether that constituted deficient performance – *i.e.*, whether

under the circumstances of that particular case counsel had a constitutional duty

to consult with the defendant about an appeal.  *Flores-Ortega*, 528 U.S. at 479;

*Thompson*, 504 F.3d at 1207.

Movant claims that after the Court sentenced Movant, Mr. Smith did not

consult with him about his appellate rights.[6]  As discussed previously in Section

III.A., *supra*, in contrast Mr. Smith testified that he did, in fact, discuss Movant's

appellate rights with him in connection with the appellate waiver and that any

appeal would likely be unsuccessful based on the waiver.  Mr. Smith also testified

that he asked Movant after sentencing if Movant wanted to appeal and Movant told

_____

[6] The undersigned notes that immediately after sentencing, Judge Batten advised Movant that even though he had waived his appellate rights, any appeal must be effected by filing a written notice with the Clerk within fourteen days and that failure to do so in a timely fashion would result in a waiver of all of Movant's appellate rights.  (Doc. 369 at 24).

him that he did not.  According to Mr. Smith's testimony, therefore, he satisfied the duty to consult with Movant about an appeal by discussing with Movant the rights Movant had under the appellate waiver, advising Movant about the advantages and disadvantages of an appeal, and making a reasonable effort to determine whether Movant wished to pursue an appeal.  Thus, the undersigned could end the discussion here and find that Mr. Smith did, in fact, consult with Movant about his appellate rights.

Movant, however,  testified that Mr. Smith did not consult with him about his appellate rights, although Movant admitted that through an interpreter Mr. Smith went over the entire plea agreement with him – which included the appellate waiver – and that Movant never expressed his desire to appeal to Mr. Smith.  Even if the undersigned were to believe Movant's vague recitation of these facts over Mr. Smith's more unambiguous testimony, the dispositive question in this case then would become "whether counsel's failure to consult with [Movant] itself constitutes deficient performance."  *Flores-Ortega*, 528 U.S. at 478; *Ortero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007).  The answer still remains no.

22

Indeed, a criminal defense lawyer does not have a *per se* constitutional obligation to consult with his client about an appeal. *See Flores-Ortega*, 528 U.S. at 479; *Otero*, 499 F.3d at 1270 ("We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient."). Instead, the inquiry derives from *Strickland*, that is, whether counsel's assistance was reasonable considering all of the circumstances. *Flores-Ortega*, 528 U.S. at 478; *Otero*, 499 F.3d 1267.

Counsel has a constitutional duty to consult with a defendant about an appeal "when counsel has reason to think either:  (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480; *see also Thompson*, 504 F.3d at 1207; *Otero*, 499 F.3d at 1270.  This inquiry turns on "highly relevant" factors, such as whether the defendant entered a guilty plea, whether he received the sentence he bargained for, and whether the plea agreement contained an appellate waiver. *Flores-Ortega*, 528 U.S. at 480; *Otero*, 499 F.3d at 1270.

23

Here, as in *Otero*, Movant entered into a guilty plea, "which tends to indicate that he was interested in 'seek[ing] an end to judicial proceedings.'" *Otero*, 499 F.3d at 1270 (quoting *Flores-Ortega*, 528 U.S. at 480). Additionally, Movant's ninety-six month sentence was at the low end of the calculated guideline range, was considerably lower than the twenty-year statutory maximum, and was significantly less than Movant would have received had he proceeded to trial and been convicted on the additional forty-one counts. Moreover, the plea agreement contained a valid and enforceable appellate waiver, which allowed Movant to appeal only if (1) there was an upward departure or variance from the calculated guideline range, or (2) the Government appealed, and Movant does not argue that either exception applies in this case. (Doc. 282, Att. 1 at 10). Similar to *Otero*, therefore, "on account of the plea agreement's broad appeal waiver, any appeal taken by [Movant] would have been frivolous and would have been an appeal that no rational defendant would have taken." *Id.* at 1271.

Finally, Movant admits that after sentencing he never demonstrated to Mr. Smith that he was interested in appealing his sentence. For all these reasons, Mr. Smith was not under a constitutional obligation to consult with Movant about an appeal. *See Devine v. United States*, 520 F.3d 1286, 1288-89 (11th Cir. 2008)

24

(affirming district court's finding that counsel did not have an affirmative duty to consult with the defendant about an appeal because he had pled guilty, there were no nonfrivolous grounds for relief, his plea included an appeal waiver, the sentence was at the bottom of the guidelines, and he did not reasonably demonstrate to counsel that he was interested in appealing); *Otero*, 499 F.3d at 1271 ("Because no rational defendant in [the movant's] position would have sought to appeal in light of the broad appeal waiver, and because [the movant] did not communicate to his lawyer a desire to appeal, we conclude that [the movant's] lawyer was not under a constitutional obligation to consult [the movant] about an appeal."). Accordingly, Movant has not demonstrated ineffective assistance of counsel, and the instant motion to vacate should be denied.

IV.    <u>Conclusion</u>

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Alfredo Betancourt-Munoz's motion to vacate sentence [Docs. 373, 439] be **DENIED WITH PREJUDICE**.

**IT IS ORDERED** that Movant's motion for discovery [Doc. 397] be **DENIED AS MOOT**.

25

V.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part."   *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion.  *See id.*  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325).  In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

26

*v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion of Movant's claims, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant did not demonstrate ineffective assistance of counsel.  *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

 **IT IS SO RECOMMENDED AND ORDERED** this 3rd day of September, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

27

AO 72A
(Rev.8/82)